# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
04/18/2018
CT Log Number 533183339

TO:     Allison Hawkins
        United Airlines, Inc.
        609 Street, 16th Floor
        Houston, TX 77002

RE:     **Process Served in Missouri**

FOR:    United Airlines, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Russell and Stacey Schmidt, Pltfs. vs. United Airlines, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | summons, Petition, Attachment(s) |
| **COURT/AGENCY:** | St. Louis County Circuit Court, MO<br>Case # 18SLCC01137 |
| **NATURE OF ACTION:** | Air carriers like United have certain duties and obligations owed to disabled r 0 C passengers. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Clayton, MO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/18/2018 at 15:51 |
| **JURISDICTION SERVED :** | Missouri |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Randall L. Rhodes<br>5250 West 116th Place, Suite 400<br>Leawood, KS 66211<br>913-387-1600 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/20/2018, Expected Purge Date: 04/25/2018 |
| | Image SOP |
| | Email Notification,  Allison Hawkins  allison.hawkins@united.com |
| | Email Notification,  Lauren Doerries  lauren.doerries@united.com |
| | Email Notification,  Maria Bustamante  maria.bustamante@united.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>120 South Central Avenue<br>Suite 400<br>Clayton, MO 63105<br>314-863-5545 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D WARNER JR | Case Number: 18SL-CC01137 |
| Plaintiff/Petitioner:<br>RUSSELL SCHMIDT | Plaintiff's/Petitioner's Attorney/Address<br>RANDALL LEE RHODES<br>STE 400<br>5250 W 116TH PLACE<br>LEAWOOD, KS 66211 |
| vs. | |
| Defendant/Respondent:<br>UNITED AIRLINES, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

### Summons in Civil Case

The State of Missouri to:  UNITED AIRLINES, INC.
            Alias:

CT CORPORATION SERVICES
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

**COURT SEAL OF**

**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

17-APR-2018
Date                                                         Clerk

Further Information:
CD

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

*(Seal)*   Subscribed and sworn to before me on _____ (date).

My commission expires: _____              _____
                                     Date                                       Notary Public

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $   10.00 | |
| Mileage | $_____ | (_____ miles @ $_____ per mile) |
| Total | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-99) SM30 (SMCC) *For Court Use Only*: Document ID# 18-SMCC-3303      |   (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
                                                        54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

### NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-99) SM30 (SMCC) *For Court Use Only:* Document ID# 18-SMCC-3303    2    (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

(3) <u>Early Neutral Evaluation ("ENE")</u>: A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

(4) <u>Mini-Trial:</u> A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

(5) <u>Summary Jury Trial:</u> A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## <u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30 (SMCC) *For Court Use Only*: **Document ID# 18-SMCC-3303**   3   (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**18SL-CC01137**

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

RUSSELL AND STACEY SCHMIDT, )
307 Pearl Drive )
Hillsboro, MO 63050 )
     )
     Plaintiffs, )
     )
vs. )    Case No.
     )
UNITED AIRLINES, INC., )    Division:
**Serve:** )
**CT Corporation Services,** )
**120 South Central Avenue,** )    **JURY TRIAL DEMANDED**
**Clayton, Missouri 63105,** )
     )
     Defendant. )

## PLAINTIFFS' PETITION FOR DAMAGES

For their claims and causes of action against defendant, plaintiffs Russell and Stacey Schmidt state and allege as follows.

### Jurisdiction and Venue

1. At all relevant times, the plaintiffs have been married and have resided in Jefferson County, Missouri.

2. Defendant United Airlines, Inc. (United) was, at all relevant times, a foreign corporation organized and existing according to the laws of Delaware. United has a principal place of business in Illinois. At all relevant times, United has conducted business in Missouri. United is and has been engaged in the business of, among other things, providing air transportation services in Missouri. United has committed tortious acts in Missouri in that it negligently attempted to transport a wheelchair for a disabled person from and back to the St. Louis airport and caused significant damage to that wheelchair. United is

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

subject to the jurisdiction of this Court. In addition to consent jurisdiction and general personal jurisdiction over United, this Court has specific personal jurisdiction over United for the following reasons:

a. United knowingly, intentionally and deliberately booked the plaintiffs and their family for air travel originating in and returning to Missouri and this lawsuit arises from that transaction;

b. United knowingly, intentionally and deliberately represented that it was capable of safely and properly transporting a wheelchair for one of the members of plaintiffs' family on a flight originating in and returning to Missouri;

c. United knows that the market for its air travel services includes, but it not limited to, all fifty states, including Missouri;

d. United engages in daily activity in Missouri by interacting with consumers and Missouri-based travel agents, selling tickets and related goods and services to Missouri residents, transporting passengers to and from numerous airports in Missouri and fielding consumer questions and complaints;

e. United maintains highly interactive websites on which Missouri residents can communicate directly with United, make travel arrangements and/or otherwise interact with United;

f. United has been a party in hundreds of cases where it has come into the courts of Missouri, without claiming a lack of personal jurisdiction;

2

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

    g.  United has been a party seeking relief or review in numerous cases where it has purposefully availed itself of the jurisdiction of the courts of Missouri by serving as the plaintiff, petitioner, appellant or removing party;

    h.  United has a regular plan for promoting and selling air transportation services in Missouri with the goal of achieving a commercial benefit from Missouri residents;

    i.  United engages in national marketing of its services and products that intentionally pervade into the Missouri market;

    j.  United targets marketing specific to Missouri;

    k.  United is registered to do business in Missouri and has a registered agent in Missouri;

    l.  United has hundreds of thousands of customers in Missouri;

    m.  United derives hundreds of millions of dollars a year from sales of air travel services in Missouri;

    n.  United has purposefully availed itself of the privilege and benefits of conducting business in Missouri; and/or

    o.  United's acts and omissions both inside and outside Missouri caused injury within Missouri to Missouri residents.

3. Jurisdiction is proper in this Court pursuant to Mo.Const.Art. 5, § 14(a).

4. Venue is proper in this Court pursuant to R.S.Mo. § 508.010.4 because the air travel at issue in this lawsuit in which plaintiffs were first injured originated and then concluded in St. Louis County.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

### Background Facts

5.  Air carriers like United have certain duties and obligations owed to disabled passengers.

6.  United is required by 14 CFR Part 382 (Part 382) to provide disabled passengers with enplaning and deplaning assistance, including connecting assistance and assistance in moving within the terminal.

7.  Part 382 implements the Air Carrier Access Act (ACAA), 49 U.S.C. § 41705, and violations of that part also violate the ACAA.

8.  To the extent that ACAA and Part 382 violations occurred in interstate air transportation, such incidents are also violations of 49 U.S.C. § 41702, which requires that United provide safe and adequate interstate air transportation.

9.  Further, pursuant to 14 CFR 259.5(b)(6), a covered carrier must adhere to a customer service plan which includes a commitment to properly accommodate passengers with disabilities as required by Part 382.

10. Violations of the ACAA and 14 CFR Parts 259 and 382, as well as of 49 U.S.C. §§ 41702 and 41310, are unfair and deceptive practices in violation of 49 U.S.C. § 41712.

11. Part 382 requires United to provide passengers with disabilities prompt enplaning and deplaning assistance, which inherently includes assistance in moving within the terminal and connecting assistance, if requested.

12. Specifically, § 382.95(a) requires United to promptly provide or ensure assistance requested by or on behalf of passengers with a disability in enplaning and deplaning the aircraft.  This assistance must include, as needed,

4

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

the services of personnel and the use of ground wheelchairs, accessible motorized carts, boarding wheelchairs, on-board wheelchairs, and ramps or mechanical lifts.

13. In addition, § 382.91 requires carriers to provide or ensure assistance (i.e., wheelchair assistance) requested by or on behalf of a passenger with a disability in transportation between gates to make a connection to another flight and assistance in moving from the terminal entrance through the airport to the gate for a departing flight, or from the gate to baggage claim and the terminal entrance for an arriving flight. This requirement also includes assistance in accessing key functional areas of the terminal.

14. United has a long and well documented history of violating §§ 382.91 and 382.95. United has been fined for these violations.

15. Pursuant to § 382.125, United must stow wheelchairs, other mobility aids, or other assistive devices in the baggage compartment if an approved stowage area is not available in the cabin.

16. United must provide for the checking and timely return of passengers' wheelchairs, other mobility aids, or other assistive devices as close as possible to the door of the aircraft so that passengers may use their own equipment to the extent possible.

17. Further, § 382.129(b) requires United to return wheelchairs, other mobility aids, and other assistive devices to the passenger in the condition in which it received them.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

18. The DOT has documented numerous instances of United failing to return passengers' wheelchairs, other mobility aids, or other assistive devices in a timely manner and in addition, numerous instances in which United violated 14 CFR 382.129(b) by failing to return wheelchairs, other mobility aids, and other assistive devices to passengers in the condition in which United received them. And United has been fined for these violations.

19. United has a well-documented history of violating the laws discussed above, to the detriment of disabled passengers.

20. United has been fined for its repeated violations of the laws discussed above.

21. Consent Order 2016-1-3 is an agreement reached between United and the United States Department of Transportation.

22. In the Consent Order, inter alia, the DOT said the following:

> *We order United Airlines, Inc., its successors, its affiliates, and all other entities owned by, controlled by, or under common ownership and control with United Airlines, Inc., its successors, its affiliates, and its assigns to cease and desist from further violations of 14 CFR 259.5(b)(6), 382.91, 382.95(a), 382.125, and 382.129(b), and 49 U.S.C. §§ 41705, 41310, 41702, and 41712.*

### Facts Underlying the Lawsuit

23. The plaintiffs' minor daughter, █████, suffered injuries in a car wreck that left her paralyzed and trapped in a wheelchair. At all times relevant to the issues in this petition, █████ used a common electric wheelchair used by

6

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

countless other spinal cord injury patients around the world, all of whom are and were foreseeable passengers on United flights.

24. In December of 2016, the Schmidt family was scheduled to go on a vacation that included a Disney Cruise.  They were to fly on United from St. Louis to Houston and then, after their vacation, back from Houston to St. Louis.

25. The Schmidt family's travel arrangements had them leaving St. Louis on December 23, 2016.

26. On December 9 and again on December 16, Mr. Schmidt called United and spoke with a member of the customer care staff about needing to stow ████'s electric wheelchair on the airplane.  He told United about ████'s wheelchair and was repeatedly assured that United "deals with this all of the time" and was told not to worry.   United never asked for the make and model of ████'s wheelchair.

27. When the Schmidt family arrived at the United desk at Lambert on December 23, they again asked about ████s wheelchair.   Again, they were again told not to worry.  After seeing ████'s wheelchair, no one from United ever commented that there was anything unusual or unforeseeable about ████'s wheelchair.

28. Given ████'s disability, the Schmidt family was pre-boarded on their flight.

29. After the plane was loaded, Mr. Schmidt was told he was going to have to help the baggage handlers load ████'s wheelchair.  In front of all of the passengers, he was escorted off the plane and taken down on to the tarmac to help load the wheelchair onto the plane.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

30. Mr. Schmidt helped the baggage handlers lift ███'s 400 pound wheelchair up onto the conveyor belt ramp.  He then helped the baggage handlers guide the wheelchair up the ramp, only to find that it would not fit under the jet engine.

31. The baggage handlers did not have any idea how to handle the situation.  Mr. Schmidt told everyone they needed to partially disassemble ███'s wheelchair to get it into the cargo hold.  A tool kit was found, but not before a United employee angrily confronted Mr. Schmidt for being on the tarmac.  Once that situation was resolved, Mr. Schmidt partially disassembled the wheelchair and helped the baggage handlers get the chair in the cargo hold.

32. Thereafter, Mr. Schmidt was escorted back to the plane, which was now an hour late taking off.  He was jeered and booed by some of the passengers on the plane.

33. After arriving at Houston, the baggage handlers were able to unload ███'s wheelchair without involving Mr. Schmidt.  However, Mr. Schmidt had to help the baggage crew remove the wheelchair from the conveyor and then, wait for nearly an hour while United personnel found the tools needed to reassemble ███'s wheelchair.

34. In stark contrast to United, Disney personnel were waiting on the Schmidt family and did everything necessary to accommodate ███'s disability and her wheelchair.  From the transportation to the cruise, accommodating ███'s disability was no problem for Disney.

8

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

35. Unfortunately, three days into their vacation, ████'s wheelchair began to malfunction due to damage sustained on the flight from St. Louis to Houston. Given that they were out at sea and there was not a replacement wheelchair available, Mr. Schmidt did what he could to keep the wheelchair functional for ████. The malfunctioning wheelchair caused significant problems and issues for the Schmidt family during and after their vacation.

36. The Schmidt family's return flight from Houston to St. Louis was on December 29. The Schmidt family arrived at the airport at or around 12:10 that afternoon for their 3:25 flight home. They checked their bags, cleared security and proceeded to the gate for their flight to let the gate agent know about ████'s wheelchair. "No problem . . . we deal with this situation all of the time" was the response.

37. Inexplicably, the flight was delayed from 2:25 until 5:25 that afternoon. This created an enormous problem. ████ has a feeding tube. The Schmidt family was required to check their baggage that contained ████'s food. This presented a serious health issue for ████, as young people with feeding tubes require meals at certain times to help facilitate their bowel programs and their catheter routines. After far too much time and debate, the gate agent finally went on the plane and retrieved ████'s food.

38. Adding insult to injury, the flight was delayed another hour. No one in the Schmidt family was offered food vouchers, unlike other passengers who were waiting on the delayed flight.

Electronically Filed - St. Louis County - March 14, 2018 - 12:32 PM

39. When the boarding process started, Mr. Schmidt again reminded the gate agent about ████'s wheelchair.  Again, he was told not to worry and that United dealt with wheelchairs routinely.

40. The baggage handler who came to get ████'s wheelchair clearly had no idea what he was doing.   However, the Schmidt family was boarded on the plane, trusting that United could safety handle and transport ████'s wheelchair. Not surprisingly, the flight was delayed even longer as the baggage handlers struggled to load the wheelchair.

41. Despite being assured that ████'s wheelchair would be loaded last in Houston so that it could be unloaded first and waiting for the Schmidt family when they got off of the plane in St. Louis, that proved not to be the case. The Schmidt family was patiently waiting for ████'s wheelchair well after all of the other passengers had left.

42. When the wheelchair finally arrived, it was in pieces.  Several important components were missing.  Other components were broken.  ████'s $40,000 wheelchair had been seriously damaged, yet again, by United.

43. As a direct and proximate result of United's acts and omissions, the Schmidt family suffered significant damages.  ████'s expensive wheelchair has been damaged and needed to be repaired or even replaced.  Because of the damage and repairs, the Schmidt family fears that it will be unreliable and further, that it has significantly diminished in value.  Further, the acts and omissions of United caused significant emotional and mental distress to all of the members

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

of the Schmidt family as well as embarrassment and humiliation.  Lastly, ████'s rights as a disabled passenger were violated by United.

44. Certain allegations contained herein are made in the alternative.

### Count I — Negligence

45. Plaintiffs incorporate herein by reference the allegations contained above in ¶¶ 1 through 44.

46. United had duties to safely and properly transport ████'s wheelchair from St. Louis to Houston and then, from Houston to St. Louis.  Further, United had a duty to accommodate ████'s disability, to properly and safely transport her wheelchair and, once checked, to return ████'s wheelchair in the undamaged condition in which it was received by United.  These duties arise under the common law, under federal law and certain rules and regulations and, lastly, pursuant to the Restatement (Second) of Torts, §§ 323 and 324A.

47. United breached these duties and such breaches were careless and negligent in a number of respects, including but not limited to, the following:

    a.  United failed to properly and safely transport ████'s wheelchair;

    b.  United allowed ████'s wheelchair to be seriously damaged;

    c.  United failed to return ████'s wheelchair undamaged and in the condition in which it was received;

    d.  United failed to accommodate ████'s disability;

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

   e.  United failed to have employees and/or agents with the proper training and expertise to ensure that ███'s wheelchair was properly and safely transported; and/or

   f.  United failed to have proper procedures and protocols for the safe transportation of electric wheelchairs.

48. United's negligent breach of its duties directly caused or directly contributed to cause significant injuries and damages to plaintiffs, as set forth above.

49. The acts and omissions of United were outrageous and evidence a complete indifference to and conscious disregard for disabled passengers like ███. Punitive damages in the amount of at least $10 million are appropriate against United to punish United and to deter United and others from similar conduct in the future.

WHEREFORE, plaintiffs pray for judgment against United on Count I of their petition, for a fair and reasonable sum of damages, for punitive damages, for their costs herein and for such other relief as the Court deems just and proper.

### Count II — Negligent Misrepresentation

50. Plaintiffs incorporate herein by reference the allegations contained above in ¶¶ 1 through 49.

51. The representations and statements of United described above were made to further United's pecuniary interests.

52. Because United failed to exercise reasonable care, the information provided to plaintiffs regarding United's capacity and ability to safely and properly transport ███'s wheelchair were false.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

53. United intended for plaintiffs to rely on the information United supplied to plaintiffs regarding the transportation of ▮▮▮'s wheelchair.

54. United knew plaintiffs relied on the information United supplied to plaintiffs regarding the transportation of ▮▮▮'s wheelchair.

55. Plaintiffs justifiably relied on the information supplied by United.

56. As a result of United's failure to disclose its inability to safely and properly transport ▮▮▮'s wheelchair, plaintiffs were induced to obtain airplane travel tickets for their entire family, which they would not have done had United truthfully disclosed its inability to safely and properly transport ▮▮▮'s wheelchair.

57. United's negligent misrepresentations directly caused or directly contributed to cause the injuries and damages described above.

58. The acts and omissions of United were outrageous and evidence a complete indifference to and conscious disregard for disabled passengers like ▮▮▮. Punitive damages in the amount of at least $10 million are appropriate against United to punish United and to deter United and others from similar conduct in the future.

WHEREFORE, plaintiffs pray for judgment against United on Count II of their petition, for a fair and reasonable sum of damages, for punitive damages, for their costs herein and for such other relief as the Court deems just and proper.

### Count III — Fraudulent Misrepresentation/Fraudulent Inducement/Fraud

59. Plaintiffs incorporate herein by reference the allegations contained above in ¶¶ 1 through 58.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

60. As more fully described above, United deliberately, intentionally and with intent to deceive and defraud the plaintiffs supplied false information regarding both its ability to properly and safely transport disabled passengers and wheelchairs as well as the flights booked by plaintiffs.

61. United knew it had a long history of problems properly and safely transporting disabled passengers and wheelchairs.

62. United failed to disclose its long history of problems properly and safety transporting disabled passengers to plaintiffs.

63. United made certain representations to the plaintiffs, intending that plaintiffs rely upon such representations in purchasing air travel tickets with United, including, but not limited to:

   a. "Don't worry" about ███████'s wheelchair;

   b. We (United) properly and safely transport wheelchairs "all of the time;"

   c. We (United) can accommodate ███████'s disability and her wheelchair;

   d. "No worries" about transporting ███████'s wheelchair; and

   e. With respect to transporting wheelchairs for disabled passengers, "we do this all of the time."

64. The representations by United were false.

65. United knew, or should have known, that they were false at the time the representations were made.

66. United intended that the false information and failure to disclose would be acted upon by plaintiffs in their purchase of air travel tickets.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

67. The representations were material to plaintiffs' purchase of air travel tickets.

68. The representations were a material inducement to plaintiffs purchasing air travel tickets from United.

69. Plaintiffs had no knowledge of the falsity of United's representations and could not reasonably determine the falsity of those representations.

70. Plaintiffs relied on the representations in making the purchase of the air travel tickets from United.

71. Plaintiffs used that degree of care that would have been reasonable in plaintiffs' situation.

72. United's acts and omissions directly caused or directly contributed to cause the injuries and damages described above.

73. The acts and omissions of United were outrageous and evidence a complete indifference to and conscious disregard for disabled passengers like ██████. Punitive damages in the amount of at least $10 million are appropriate against United to punish United and to deter United and others from similar conduct in the future.

WHEREFORE, plaintiffs pray for judgment against United on Count III of their petition, for a fair and reasonable sum of damages, for punitive damages, for their costs herein and for such other relief as the Court deems just and proper.

### Count IV — Violation of the Missouri Merchandising Practices Act

74. Plaintiffs incorporate herein by reference the allegations contained above in ¶¶ 1 through 73.

15

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

75. The Missouri Merchandising Practices Act ("MMPA") was enacted with the purpose of ensuring honesty, fair play, and right dealings in consumer transactions and as a supplement to common law fraud remedies.

76. The MMPA is interpreted broadly to achieve the policy goals listed above.

77. The MMPA prohibits the use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or concealment, suppression, or omission of material facts before, during, or after the sale or advertisement of any merchandise in trade or commerce.

78. The MMPA authorizes a private civil cause of action to any person who purchases or leases merchandise for personal, family, or household purposes and thereby suffers ascertainable loss of money or damages as a result of the above listed prohibitions.

79. Merchandise is broadly defined as any objects, wares, good, commodities, intangibles, real estate or *services*.

80. The air travel tickets sold to plaintiffs by United and the air travel qualify as merchandise under the MMPA.

81. Plaintiffs purchased the merchandise for personal, family, and household purposes.

82. In connection with the sale of the merchandise, United committed acts prohibited by the MMPA by using deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of material facts in connection with the sale of the air travel tickets and in subsequent conversations with the intent to induce plaintiffs to use

16

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

United to fly their family to and from their vacation.    More specifically,
United:

    a.  Misrepresented its ability and desire to properly and safely transport
        ████'s wheelchair;

    b.  Misrepresented its ability and desire to comply with all applicable
        laws, rules and regulations applicable to the transportation of disabled
        passengers with wheelchairs; and/or

    c.  Misrepresented its ability and desire to properly accommodate
        ████'s disability as required by law.

83. United had a duty to disclose such issues prior to allowing plaintiffs and their
family to board an aircraft and failed to do so, thereby breaching their duty.

84. Violations of the ACAA and 14 CFR Parts 259 and 382, as well as of 49
U.S.C. §§ 41702 and 41310, are unfair and deceptive practices in violation of
49 U.S.C. § 41712 as a matter of law.

85. United committed acts prohibited by the MMPA in that it used and employed
deception, fraud, false pretense, false promise, misrepresentation, unfair
practice or the concealment, suppression or omission of material facts in
connection with the sale or advertisement of plaintiffs' air travel tickets.

86. United's acts and omissions directly caused or directly contributed to cause
the injuries and damages described above.

87. Further, as a result of United's prohibited actions and omissions, the actual
value of ████'s wheelchair has been substantially reduced in value and any
applicable warranties may be voided.

17

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

88. Plaintiffs suffered an ascertainable loss of money as a result of the MMPA prohibited acts committed by United. Plaintiffs, as a result of United's conduct, were and are thereby damaged, as described above.

89. United's conduct in violation of the prohibitions of the MMPA was done deliberately with the intent to misrepresent material facts and fraudulently induce plaintiffs and their family to fly with United.

90. A person who purchases merchandise and suffers an ascertainable loss of money or property as a result of the use or employment by another person of a method, act, or practice prohibited by the MMPA, is entitled to recover actual damages, punitive damages at the court's discretion, and attorney's fees for time reasonably expended, and may be awarded equitable relief as deemed necessary by the court.

91. The acts and omissions of United were outrageous and evidence a complete indifference to and conscious disregard for disabled passengers like ████. Punitive damages in the amount of at least $10 million are appropriate against United to punish United and to deter United and others from similar conduct in the future.

92. Plaintiffs have incurred and will incur attorneys' fees in prosecution of this action for which United is liable under the MMPA.

WHEREFORE, plaintiffs pray for judgment against United on Count IV of their petition, for a fair and reasonable sum of damages, for punitive damages, for their costs and attorneys fees herein and for such other equitable and legal relief as the Court deems just and proper.

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

## PLAINTIFFS REQUEST A JURY TRIAL ON ALL ISSUES

19

Electronically Filed - St Louis County - March 14, 2018 - 12:32 PM

ROUSE FRETS ROUSE GENTILE RHODES, LLC

/s/Randall L. Rhodes
Randall L. Rhodes          MO #43211
Jeffrey D. Rowe            MO #59051
Rachel N. Boden            MO #66109

5250 West 116th Place, Suite 400
Leawood, Kansas  66211
(913) 387-1600
(913) 928-6739 (facsimile)
rrhodes@rousefrets.com
jrowe@rousefrets.com
rboden@rousefrets.com

*Attorneys for Plaintiffs*

Electronically Filed - St Louis County - April 17, 2018 - 03:21 PM

**In the**

# CIRCUIT COURT

**Of St. Louis County, Missouri**

Russell and Stacey Schmidt
_____
Plaintiff/Petitioner

vs.

United Airlines, Inc.
_____
Defendant/Respondent

March 30, 2018
_____
Date

18SL-CC01137
_____
Case Number

15
_____
Division

⌐                                    ⌐

For File Stamp Only

L                                    ⌐

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiffs, Russell and Stacey Schmidt_____, pursuant
                        Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

 Robert Pedroli, 130 S. Bemiston, Suite 300, Clayton, MO  63105; 314-775-4948
Name of Process Server                          Address                                         Telephone

 Richard Langdon, Same Address
Name of Process Server                          Address or in the Alternative                   Telephone

 Kathleen Langdon, Same Address
Name of Process Server                          Address or in the Alternative                   Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                          SERVE:
 United Airlines, Inc. / CT Corporation Services      _____
Name                                            Name
 120 South Central Ave.                          _____
Address                                         Address
 Clayton, MO  63105                              _____
City/State/Zip                                  City/State/Zip

SERVE:                                          SERVE:
_____                         _____
Name                                            Name
_____                         _____
Address                                         Address
_____                         _____
City/State/Zip                                  City/State/Zip

Appointed as requested:

**JOAN M. GILMER**, Circuit Clerk


By _____ _/s/ Chyrell DeShay_____
        Deputy Clerk

        **04/17/2018**
_____
Date

_/s/Randall L. Rhodes_____
Attorney/Plaintiff/Petitioner
 43211
_____
Bar No.
 5250 W. 116th Place, Ste. 400, Leawood, KS 66211
Address
 (913) 387-1600                    (913) 928-6739
Phone No.                          Fax No.

CCADM62-WS    Rev. 03/14

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

┌                    ┐
For File Stamp Only

__Russell and Stacey Schmidt__
Plaintiff/Petitioner

vs.

__United Airlines, Inc.__
Defendant/Respondent

__March 30, 2018__
Date

__18SL-CC01137__
Case Number

__15__
Division

└                    ┘

Electronically Filed - St Louis County - March 30, 2018 - 10:09 AM

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiffs, Russell and Stacey Schmidt__ , pursuant
   Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
__Robert Pedroli, 130 S. Bemiston, Suite 300, Clayton, MO  63105; 314-775-4948__
Name of Process Server                              Address                                       Telephone
__Richard Langdon, Same Address__
Name of Process Server                    Address or in the Alternative                          Telephone
__Kathleen Langdon, Same Address__
Name of Process Server                    Address or in the Alternative                          Telephone
Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:
__United Airlines, Inc. / CT Corporation Services__
Name
__120 South Central Ave.__
Address
__Clayton, MO  63105__
City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk


By _____
   Deploy Clerk
   Deputy Clerk

_____
Date

__Randall L. Rhodes__
Attorney/Plaintiff/Petitioner
__43211__
Bar No.
__5250 W. 116th Place, Ste. 400, Leawood, KS 66211__
Address
__(913) 387-1600__          __(913) 928-6739__
Phone No.                              Fax No.

CCADM62-WS    Rev. 03/14

Electronically Filed - St. Louis County - March 30, 2018 - 10:09 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment.

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com.  (LawandPublicSafety/Circuit/Forms).

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM6-WS      Rev. 03/14

**In the**

# CIRCUIT COURT

**Of St. Louis County, Missouri**

For File Stamp Only

__Russell and Stacey Schmidt__
Plaintiff/Petitioner

vs.

__United Airlines, Inc.__
Defendant/Respondent

__March 30, 2018__
Date

__18SL-CC01137__
Case Number

__15__
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiffs, Russell and Stacey Schmidt__ , pursuant
_____
Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

__Robert Pedroli, 130 S. Bemiston, Suite 300, Clayton, MO  63105; 314-775-4948__
Name of Process Server                            Address                                      Telephone

__Richard Langdon, Same Address__
Name of Process Server                   Address or in the Alternative                Telephone

__Kathleen Langdon, Same Address__
Name of Process Server                   Address or in the Alternative                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:
__United Airlines, Inc. / CT Corporation Services__
Name
__120 South Central Ave.__
Address
__Clayton, MO  63105__
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

By _____
        Deputy Clerk

_____
Date

__Randall L. Rhodes__
Attorney/Plaintiff/Petitioner
__43211__
Bar No.
__5250 W. 116th Place, Ste. 400, Leawood, KS 66211__
Address
__(913) 387-1600__          __(913) 928-6739__
Phone No.                                 Fax No.

CCADM62-WS    Rev. 03/14

Electronically Filed - St Louis County - April 05, 2018 - 09:31 AM